452

4-9773                                    248 S. W. 2d 364

Opinion delivered April 28, 1952.

Rehearing denied May 26, 1952.

*Chris Carpenter,* for appellant.

*Geo. E. Pike,* for appellee.

WARD, J.   The principal issues involved in this litigation are the validity of a tax deed executed by the State, and an attempt to cancel the deed on the ground that the tax sale supporting the State's title was void. Involved in this suit are lots 5, 6, 7 and 8 in block 1 of Branstetter's Addition to DeWitt.

On November 1, 1941, Robert Eason, appellee, obtained a deed from the State conveying to him said property. The deed, which was introduced in evidence, shows that the land was deeded to the State as a result of a forfeiture for the nonpayment of the *1933* taxes. Within two or three days after receiving the State deed appellee entered into possession of the land, placed a building on it, and he and his family have lived on it and paid the taxes ever since. It appears from the testimony that

when appellee moved on the property it was unoccupied; that it was more or less grown up in briers and bushes and littered with old automobile wrecks; that it had an old wire fence on three sides; and that he did not have to remove any fence or gate when he moved on. It appears that the property had very little value in 1941. It was situated at the extreme edge of the corporate limits, was more or less swamp land, had a creek running through it, and there were no streets. Since moving on the land appellee has added improvements valued in excess of $3,000.

Appellant in her effort to defeat appellee's State deed relies upon the matters set forth below.

Some time prior to March 24, 1941, the State instituted suit, designated as No. 3806, to confirm title in many parcels of land in Arkansas County among which were the lots here involved. On the day above mentioned appellant filed in court her exceptions to the confirmation of the involved lots, and on the same day the court [evidently] announced its decree confirming all the lands except the said lots. We used the above word in brackets because no decree was filed as of that day, but the court, on February 9, 1942, entered an order *nunc pro tunc* as of March 24, 1941. Among other provisions this order contained this paragraph with reference to the lots here involved: "It appearing that interventions have been filed and that upon the hearing of the same that certain lands were erroneously forfeited, the within cause is hereby dismissed as to said lands, to-wit: [here the lots involved are described]." It should be noted that cause No. 3806 was also designated "1936 suit."

On December 26, 1941, appellant, designated herself as "Exceptor," filed a cross-complaint in which she asserted title to the lots, re-asserted the same grounds for excepting, and prayed for cancellation of the State deed and for costs and damages against appellee, who was for the first time joined as cross-defendant. Appellant's exceptions set forth, as grounds for voiding the tax forfeiture and sale, that: (1) The lands were sold on a day not authorized by law; (2) The lands were not adver-

tised for the time and in the manner described by law; (3) The lands were not assessed, and the list was not verified, all as required by law; (4) The list was not recorded before the day of sale, the school tax for *said* year was not lawfully levied, and the assessor failed to authenticate the assessment record and list and failed to file the same as required by law; (5) The tax book for the year *1936* does not contain a warrant authorizing a collection of taxes; and (6) The clerk failed to record the delinquent list for the *1936* property and failed to properly certify the same.

Following the above and on January 24, 1942, appellee filed a demurrer to the cross-complaint on the ground that a cause of action had not been stated and that the court had no jurisdiction.

On February 9, 1942, appellant filed an amendment to her cross-complaint in which she deraigns her title through her mother and further alleged that appellee received his deed *while this suit was pending* and that he went into possession; and that ''said deed and conveyance being based solely upon the Collector's sale for nonpayment of the alleged *1936* taxes'' was void. It is noticeable that the *1936* tax forfeiture is mentioned eight or ten times in appellant's amended pleading. The prayer asked that her land be not confirmed in the State, that the deed based on the *"aforesaid* illegal and void tax sale be cancelled,'' that ''the aforesaid pretended tax sale held on November 1, 1937, be held void,'' and that she be allowed to redeem and have her title quieted. In answer to the above pleading appellee, on March 19, *1941,* entered a general denial, alleged he had been in possession under said deed since October, *1941,* and exhibited his deed from the State which was referred to above. At the same time appellee filed a demurrer on the ground that since he was in possession the chancery court had no jurisdiction.

With nothing in the record to explain the delay, no steps were taken in the matter for approximately nine years when appellee, on May 13, 1950, filed an answer to appellant's cross-complaint and amendment thereto.

Appellee also filed two amended answers in June of the same year and on March 26, 1951, he filed still another. In all these latter pleadings appellee insisted on his demurrer, relied on his State deed, claimed adverse possession, pleaded the seven-year statute, and also the two-year statute set forth in Ark. Stats., § 34-1419. Appellant filed a reply on March 26, 1951, denying all allegations made by appellee and specifically pleaded that the original confirmation decree mentioned before was *res judicata* of appellee's claim herein.

It should also be noted here that all the original papers and exhibits in the original confirmation suit were lost, as was found by an order of the lower court made September 24, 1951. In this order the court found that the original suit was for the purpose of confirming the tax sale for the taxes for the years 1933, 1934, 1935, and 1936 on the lands in question and other lands.

Several questions were raised by the pleadings on which testimony was introduced and excellent briefs presented here—such as appellee's right to improvements and the amount thereof, the sufficiency of appellant's chain of title, the right of appellee to introduce evidence to show that the lands in question had sold to an improvement district prior to 1940, and the merits of appellee's demurrer to the court's jurisdiction—but in view of the conclusion we have reached it becomes unnecessary to discuss them.

Appellant first insists that the original confirmation decree is *res judicata* of appellee's claim. Her position is that the effect of the confirmation decree [in failing to confirm as to the lands in question] was to declare void the tax forfeiture and/or sale on which the State deed rested, and that, therefore, the State deed to appellee must fail. There are several reasons why we cannot agree with appellant on this point. The State deed shows on its face that it is based on a *1933* forfeiture, but there is nothing in the record from which the lower court or this court can be sure that this was the forfeiture which the original decree found erroneous and upon which it refused to allow confirmation. Apparently, judging from

appellant's objections, the court found that the *1936* [not the *1933*] forfeiture and/or sale was void. Appellant herself evidently did not believe what she here contends for, because her later pleadings recognized the issue to be a live one and specifically prayed that title be not confirmed in the State.

In our opinion appellant cannot prevail for the reason that she has not shown the invalidity of the tax forfeiture and/or tax sale by reason of which the State derived its title.

First, the deed shows, as mentioned before, that it is based on a tax sale for the taxes of *1933,* yet nowhere is there a definite showing that the sale for 1933 was irregular. All the proof apparently was directed at the 1937 sale for the 1936 taxes. It is true that the belated order of the lower court found that the original pleadings [which were lost] related to lands sold for the taxes of 1933, 1934, 1935 and 1936, but this fact did not obviate the necessity of introducing proof that the *1933* sale was void. No such proof appears in the record. It may be urged that the pleadings show that there was only one sale [the one in 1937] for the taxes for all the years including 1933. This could be the actual situation, but it would be an unusual and exceptional situation and appellant bore the burden of proving it. Again no such evidence appears in the record. We have carefully read all the pleadings filed by appellant and at no place is there any allegation that the *1933* forfeiture or the sale based thereon was void. The only year mentioned in the original exceptions is the year 1936. To the same effect is the cross-complaint filed December 26, 1941, which alleges ''. . . that the tax sale sought to be confirmed in this action is void and of no effect for the reasons stated and set forth in the original exceptions. . .'' The only other pleading [except a reply which was a general denial] filed by appellant was her amendment filed February 9, 1942, which contained the allegation that the state's title was ''based solely upon the Collector's sale for the non-payment of the alleged *1936* taxes. . .'' Nowhere in this pleading is any mention made of the year *1933,* but 1936 is mentioned eight or ten times.

The only witness called by appellant to testify regarding tax sales was W. B. Norsworthy, the County Clerk. It may be conceded that his testimony is sufficient to show the tax sale held in 1937 was void for irregularities. By this witness it was shown that the lots in question were assessed in .appellant's name for the years 1933, 1934, 1935 and 1936, and from this testimony it might also be inferred that the sale in 1937 was for the taxes for all those years. No records were introduced, but the witness was allowed to read certain portions. The Tax Collector's affidavit showed that he had been unable to collect the taxes [shown on the list attached to the affidavit] for the year 1936 and previous years as charged on the tax book for the year 1936.

As shown above the lots in question were assessed for taxes for the year 1933. If the officers performed the duties imposed by law the' lands were sold the following year for the delinquent taxes. In the absence of any showing to the contrary we will presume that the officers so charged did not neglect their duties, and that there was a sale for the 1933 taxes. That presumption is strongly corroborated by the undisputed fact that the deed from the state to appellee showed on its face to be based on the *1933* forfeiture.

From the above it follows that the decree of the lower court must be affirmed.